## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| OSLIN, DEBORAH JOYCE, | ) | |
| | ) | Case No. 17-11214-R |
| Debtor. | ) | Chapter 7 |

_____

| | | |
|---|---|---|
| MAXINE ARMSTRONG, as | ) | |
| Guardian of the Person and Estate | ) | |
| of Adrian Armstrong, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-1034-R |
| | ) | |
| DEBORAH OSLIN, | ) | |
| | ) | |
| Defendant. | ) | |

**Filed/Docketed**
**Jan 24, 2018**

### ORDER GRANTING MOTION TO DISMISS
### CLAIMS UNDER 11 U.S.C. § 523(a)(6) AND § 523(a)(9)

Before the Court is the Motion to Dismiss Claims Under 11 U.S.C. § 523(a)(6) and § 523(a)(9) (Adv. Doc. 5) ("Motion to Dismiss") filed on November 6, 2017, by Defendant/Debtor Deborah Oslin ("Oslin"), and the response and brief in support (Adv. Doc. 9) ("Response") filed on November 20, 2017, by Plaintiff Maxine Armstrong, as Guardian of the Person and Estate of Adrian Armstrong ("Armstrong").

On October 11, 2017, Armstrong filed a Complaint . . . for Determination of: 1) Non-Dischargeability; and 2) Objections to Debtor's Discharge, Pursuant to Sections 523 and 727, Respectively, of the Bankruptcy Code (Adv. Doc. 1) ("Complaint"). Oslin seeks dismissal only of the claims asserted under 11 U.S.C. § 523.

## I.     Jurisdiction

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2)(I) and (J), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss for "failure to state a claim upon which relief can be granted."[1] Under Rule 8 of the Federal Rules of Civil Procedure, a "pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on it face.'"[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[5]

---

[1] Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Bankruptcy Rule 7012(b).

[2] Fed. R. Civ. P. 8(a)(2), made applicable in adversary proceedings by Bankruptcy Rule 7008.

[3] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[4] Id. (citation omitted).

[5] Id. (citation omitted).

Although the Court must accept as true all factual allegations, it must also ignore conclusory material, including legal conclusions couched as factual allegations, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[6]  Based upon its "judicial experience and common sense,"[7] the Court must then determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief."[8]

To state a claim that a debt is excepted from discharge under 11 U.S.C. § 523(a)(6), the well-pleaded facts must contain sufficient detail to support a plausible inference that the debtor willfully and maliciously injured the plaintiff or the plaintiff's property.[9]  To state a claim that a debt is excepted from discharge under 11 U.S.C. § 523(a)(9), a plaintiff must plead facts from which a fact-finder could plausibly infer that the debtor operated a motor vehicle; such operation was unlawful because the debtor was intoxicated from alcohol, drugs or another substance; and such operation of the vehicle by the debtor caused a death or personal injury.[10]

## III.   Summary of Well-Pleaded Allegations Relevant to the Section 523 Claims

For the purposes of determining the Motion to Dismiss, the following allegations and reasonable inferences are taken as true:

---

[6]Id. (citation omitted).

[7]Id. at 679 (citation omitted).

[8]Id.

[9]11 U.S.C. § 523(a)(6).

[10]11 U.S.C. § 523(a)(9).

Armstrong is the court-appointed guardian of her adult son, Adrian, who was severely injured when an intoxicated minor driver ran a red light and crashed into the vehicle in which Adrian was a passenger. Employees of the Vegas Club ("Club"), a bar managed by Oslin, served alcohol to the minor driver on the night of, and prior to, the crash. Oslin was and is the sole shareholder of the Vegas Corporation ("Corporation"), the entity that owned and operated the Club. Armstrong filed a lawsuit in Tulsa County District Court against Oslin and the Corporation, alleging that both were liable for Adrian's injuries under Oklahoma's "dram shop" law because they illegally sold and served alcohol to a minor (the "State Court Action").

In June 2017, after a bench trial on the merits, Armstrong, on behalf of Adrian, obtained a judgment in the State Court Action against Oslin and the Corporation jointly in an amount in excess of $23 million. In its Journal Entry of Judgment Nunc Pro Tunc and Order for Costs ("Journal Entry of Judgment"), the state court found that the minor driver was allowed entry into the Club without showing identification, and that a Club employee served intoxicating beverages to the minor.[11] The court concluded that the Club "owed a duty of ordinary care" to Adrian to refrain from serving alcohol to minors; the Club breached the duty by allowing the minor into the Club and serving her liquor; the minor caused a serious accident that resulted in severe injuries to Adrian; and the minor's consumption of alcohol was the proximate cause of Adrian's injuries.[12] Adrian was awarded damages for

---

[11]Journal Entry of Judgment Nunc Pro Tunc and Order for Costs ("JEJ"), Exhibit A to Complaint, at 2, ¶¶ 5-6.

[12]JEJ at 6.

4

past medical expenses, permanent injury and impairment, pain and suffering, future medical expenses, and lost wages.[13]  The judgment was not appealed and is a final order.

At all relevant times, Oslin was the sole owner, officer, and director of the Corporation, and was the manager of the Club.[14]  Oslin was responsible for operating the Club, including hiring and firing employees.  She "made all the rules, and . . . enforced them."[15]  The Corporation's corporate charter had been suspended for almost two years at the time the accident that injured Adrian occurred.[16]  Oslin "failed to maintain and manage Vegas Corporation as an entity separate and distinct from its ownership."[17]  The state court concluded that due to Oslin's failure to "maintain separate personalities between herself individually" and the Corporation, Oslin was not entitled to protection of the corporate veil and was personally liable for the injuries suffered by Adrian.[18]

Armstrong alleges that the minor driver had been to the Club before, and that the minor driver was "not challenged at the door, or carded at the table."[19]  The state court found that Oslin had a "lax attitude toward owning and operating" the Club, that "she did not care

---

[13]JEJ at 3-4, ¶¶ 16-25, and at 6-7.  The trial court also awarded pre-judgment interest on the damage award.

[14]JEJ at 5, ¶ 30.

[15]Complaint at 3, ¶ 17.

[16]JEJ at 5, ¶ 31.

[17]Complaint at 3, ¶ 18.

[18]JEJ at 7.

[19]Complaint at 4, ¶ 21.

who was working so long as the shifts were covered," and that she "had no way to contact employees that worked at the Vegas Club . . . the night alcohol was served to a minor."[20]

Armstrong alleges that Oslin filed bankruptcy due to her "inability to pay [Adrian] for the lifetime of misery and medical expenses that has been foisted upon Adrian by [Oslin's] employees' gross negligence in serving liquor to underage patrons, and by [Oslin's] own gross negligence in her management, supervision, and operation of her tavern[.]"[21] Armstrong further alleges that Oslin's "gross negligence in the management of [the Club] resulted in the unlawful service of liquor and beer to the minor . . . which resulted in the horrific injuries suffered by [Adrian]."[22]  Armstrong contends that the "conduct which created [Oslin's] debt to [Adrian] was willful and malicious and intentional" and that "[t]he conduct and the results that are described in [the Journal Entry of Judgment] meet the requirements for non-dischargeability that are set forth in §523(a)(6)."[23]

In addition, based upon the allegations summarized above, Armstrong contends that "[w]hen Congress enacted §523(a)(9), it made drunken drivers liable *for life* for their bad judgment.  Congress did not intend thereby to exclude from the ambit of this statute the bar

---

[20]JEJ at 5, ¶ 34.

[21]Complaint at 5, ¶ 27.

[22]Id. at 14, ¶ 88.

[23]Id. at 14, ¶ 89.  Per Iqbal, 556 U.S. at 679, the Court must ignore legal conclusions couched as factual allegations in determining whether the Complaint states a plausible claim for relief.  Armstrong's contentions that Oslin's conduct was "willful and malicious and intentional," being "threadbare recitals of elements" of a Section 523(a)(6) claim, id. at 678, carry no weight in the Court's analysis.

keeper who serves the liquor to the minor patron who thereafter drives drunk. [Oslin's] conduct and results that are described in [the Journal Entry of Judgment] meet the requirements for non-dischargeability that are set forth in § 523(a)(9)."[24]

## IV.   Analysis

### A.   Issue preclusion

In her Motion to Dismiss, Oslin points out that the Journal Entry of Judgment establishes only that Oslin and the Club were negligent, and argues that the judgment precludes Armstrong "from asserting Oslin's debt arose from anything other than negligence, and especially 'willful and malicious' conduct as alleged in the Complaint."[25]  In attempting to except a prepetition judgment debt from discharge in bankruptcy, however, the judgment creditor is not precluded from asserting that the debt accrued as a result of the debtor's "willful and malicious" conduct, if those elements were not actually litigated and decided in the previous action.

In Brown v. Felsen,[26] the United States Supreme Court rejected the idea that a plaintiff with a state law claim must raise and prove all elements of an exception to discharge in a hypothetical future bankruptcy in the state court action in order to preclude discharge of the judgment in a later bankruptcy case.  Brown obtained a consent judgment against Felsen in

---

[24]Id. at 15, ¶ 90 (emphasis original).

[25]Motion to Dismiss at 4, ¶ 11.

[26]442 U.S. 127 (1979).

settlement of a multi-party collection action, and thereafter Felsen filed bankruptcy.[27]  In

seeking to except the judgment from Felsen's discharge, Brown asserted that the underlying

debt emanated from Felsen's fraud, deceit, and malicious conversion.[28]  The bankruptcy

court, and then the Tenth Circuit, concluded that the judgment was discharged because the

abbreviated record in the state court case did not establish fraud, and the consent judgment

did not mention fraud.[29]  The Tenth Circuit held that "the prior consent decree was

conclusive as to the nature of [Felsen's] liability."[30]

      The Supreme Court held, however, that even though the prior judgment was binding

on the parties, and Brown relied upon the judgment in the bankruptcy case to establish the

amount and validity of Felsen's debt, the judgment did not bar Brown from asserting

additional circumstances, and introducing extrinsic evidence, to show that the debt was

excepted from discharge under applicable bankruptcy law.[31]  Felsen's bankruptcy filing

raised the issue of discharge for the first time,[32] and "[c]onsiderations material to discharge

[were] irrelevant to the ordinary collection proceeding."[33]

---

[27]Id. at 128.

[28]Id. at 129.

[29]Id. at 130-31.

[30]Id. at 130.

[31]Id. at 134-35.

[32]Id. at 133.

[33]Id. at 134.

The Supreme Court reasoned that elements a creditor must prove to except a debt from discharge are defined and governed by federal bankruptcy law, and do not necessarily lend themselves to preclusive determination in a state court setting. A state court's finding of fraud or willful and malicious conduct under state law will not necessarily establish such elements in a bankruptcy non-dischargeability proceeding.[34] Moreover, a plaintiff bringing a claim under state law is entitled to pursue the path of least resistence to reduce the claim to judgment. Even if the plaintiff has evidence to prove an intentional tort, after considering the time and cost involved in litigating a claim that requires proving subjective intent, the plaintiff may elect instead to pursue recovery under a negligence or breach of contract theory.[35]

Accordingly, the Supreme Court in <u>Brown</u> held that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of . . . debt."[36] Rather, the judgment creditor was entitled to present additional evidence concerning the origin and nature of the debt – evidence not material to the resolution of the state court action – to establish that the judgment was non-dischargeable.

---

[34]<u>Id</u>. at 135-37.

[35]<u>Id</u>. at 137 and n.8.

[36]<u>Id</u>. at 138-39. In the <u>Brown</u> case, Felsen invoked *res judicata* as a bar to relitigating the nature of the judgment debt. Oslin's argument– that the Journal Entry of Judgment precludes relitigation of the nature of her debt to Armstrong – is a *res judicata* argument, notwithstanding her citation to the elements of issue preclusion.

In the case of <u>In re McKendry</u>,[37] the Tenth Circuit relied upon <u>Brown</u> in determining that a creditor was not barred from presenting evidence of the debtor's fraud in its attempt to except a post-foreclosure deficiency judgment from the debtor's discharge.  The debtor asserted that the creditor did not timely litigate its fraud claim in the foreclosure suit, and was therefore barred by the state's statute of limitations from asserting fraud in an action under Section 523(a)(2).[38]

The Tenth Circuit held that in a non-dischargeability proceeding, the creditor has two separate causes of action – one to establish the validity and extent of the debt under non-bankruptcy law, and the other to establish that the debt is not dischargeable under Section 523 of the Bankruptcy Code.[39]  In <u>McKendry</u>, the first cause of action had been established in the foreclosure case, where proof of fraud was not required to obtain the deficiency judgment.  And in accordance with <u>Brown,</u> evidence of the debtor's fraud could be raised and presented for the first time in its second cause of action – the Section 523(a)(2) action created and governed by the Bankruptcy Code.  Thus, the debtor's assertion that the creditor was time barred from asserting fraud under the state's statute of limitations was overruled.[40]

---

[37] 40 F.3d 331 (10th Cir. 1994).

[38] <u>Id</u>. at 333-34.

[39] <u>Id</u>. at 336-37, *quoting with approval* <u>In re Moran</u>, 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993).

[40] "[T]he debt has already been established, so the state statute of limitations is immaterial.  The only applicable limitations period [for a § 523(a) action] is the sixty day period provided by § 523(c)."  <u>Id</u>. at 337.

Oslin's argues that the state court's finding that Oslin was negligent precludes Armstrong "from asserting Oslin's debt arose from anything other than negligence."[41]  This conclusion is contradicted by the reasoning in <u>Brown</u> and <u>McKendry</u>.  True, the state court did not make any findings regarding willfulness or maliciousness in the Journal Entry of Judgment.  But Armstrong claims that she elected to pursue her claim in the State Court Action under a negligence theory, so it is not surprising that there is no mention of willful and malicious conduct.

In any event, the Journal Entry of Judgment does not contain sufficient information to allow this Court to determine the exact claims presented for adjudication and which issues were actually decided, and at this motion to dismiss stage, the Journal Entry of Judgment is the only part of the record of the State Court Action before the Court.[42]

B.     <u>Section 523(a)(6)</u>

Although the Motion to Dismiss cannot be resolved by applying preclusion doctrines, the question remains whether the Complaint states a claim for which relief may be granted under Section 523(a)(6).  Section 523(a)(6) provides that a debt is excepted from discharge

---

[41]Motion to Dismiss at 4, ¶ 11.

[42]To determine the preclusive effect of a prior judgment, the Court looks to the preclusion law of the jurisdiction that entered the judgment, in this case Oklahoma law.  <u>See</u> <u>McCain Foods USA Inc. v. Shore (In re Shore)</u>, 317 B.R. 536, 541 (B.A.P. 10th Cir. 2004).  Under Oklahoma law, a party relying on a judgment for its issue preclusive effect must "produce – as proof of its terms, effect and validity – the *entire* judgment roll for the case which culminated in the decision invoked as a bar to relitigation."  <u>Salazar v. Oklahoma City</u>, 1999 OK 20, 976 P.2d 1056, 1061 (emphasis original) (citations omitted).  "Without that [judgment] roll no court can determine with the requisite degree of certainty (1) what claims were pressed for adjudication and (2) which of the tendered issues were actually decided."  <u>Id</u>. at 1061-62.

if the debt is the result of a "willful and malicious injury by the debtor to another entity or to the property of another entity."[43]  In <u>Kawaauhau v. Geiger</u>,[44] the United States Supreme Court held that the dischargeablity exception under Section 523(a)(6) requires proof that the debtor actually intended to cause injury, and that debts "arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[45]

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed [in its opinion below], the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964) (emphasis added).[46]

Because the Supreme Court relied upon the Restatement (Second) of Torts to explain the parameters and characteristics of a "willful" state of mind for the purpose of Section 523(a)(6), it is helpful to review the Restatement's explanation of negligent or reckless mental states, which do not suffice under Section 523(a)(6).  These three mental states – negligent, reckless, and intentional – flow in a continuum based upon the actor's knowledge of risk and the probability of harm:

---

[43]11 U.S.C. § 523(a)(6).

[44]523 U.S. 57 (1998).

[45]<u>Id</u>. at 64.

[46]<u>Id</u>. at 61-62.

*Negligence and recklessness contrasted.*  Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.  The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.[47]

*Intentional misconduct and recklessness contrasted.*  Reckless misconduct differs from intentional wrongdoing in a very important particular.  While an act to be reckless must be intended by the actor, *the actor does not intend to cause the harm which results from it.*  It is enough that he realizes or, from facts which he knows, should realize that there is a *strong probability that harm may result,* even though he hopes or even expects that his conduct will prove harmless.  However, a *strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.*[48]

*If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.*  As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in [Restatement (Second) of Torts] § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in [Restatement (Second) of Torts] § 282. All

---

[47] RESTATEMENT (SECOND) OF TORTS § 500, cmt. *g.*

[48] RESTATEMENT (SECOND) OF TORTS § 500, cmt. *f* (emphasis added).

three have their important place in the law of torts, but the liability attached to them will differ.[49]

Following <u>Geiger</u> and the Restatement, the Tenth Circuit described the mental state required under Section 523(a)(6) as follows:

> The "willful and malicious injury" exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, *who must have wished to cause injury or at least believed it was substantially certain to occur*. When injury was "neither desired nor in fact anticipated by the debtor," it is outside the scope of the statute.[50]

Accordingly, to state a claim under Section 523(a)(6), a plaintiff must aver *facts* from which the Court might plausibly infer that the debtor acted or failed to act with an intent to cause harm or that the debtor anticipated the harm, *i.e.*, believed it was substantially certain to occur.[51]   Allegations tending to show inadvertence, incompetence, unskillfulness, or a failure to take precautions are not enough.   Allegations from which one might infer knowledge of a strong probability that someone might be harmed is not enough.   To survive Oslin's Motion to Dismiss, Armstrong's Complaint must state a plausible case that Oslin

---

[49]RESTATEMENT (SECOND) OF TORTS § 8A, cmt. *b* (emphasis added).

[50]<u>Via Christi Regional Medical Center v. Englehart (In re Englehart)</u>, 229 F.3d 1163 (Table), 2000 WL 1275614 (10th Cir.) at *3 (emphasis added).

[51]Rule 9(b) of the Federal Rules of Civil Procedure permits a plaintiff to generally allege "malice, intent, knowledge, and other conditions of a person's mind."  In order to *plausibly* allege a certain state of mind, however, the  general allegation must be supported by relevant facts from which the state of mind may be inferred.  <u>See, e.g.</u>, <u>Biro v. Condé Nast</u>, 807 F.3d 541, 544-45 (2d Cir. 2015), *citing* <u>Iqbal</u>, 556 U.S. at 686-87. <u>See also</u> <u>Pippen v. NBCUniversal Media, LLC</u>, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible"); <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 58 (1st Cir. 2012) ("[T]o make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred.").

either desired to injure Adrian or believed his injury was a substantially certain consequence of her conduct.

The first obstacle for Armstrong is the undisputed fact that Oslin did not serve liquor to the minor.  Oslin was not even present when the act that led to the minor's intoxication, which led to the minor's failure to heed a red light, which led to Adrian's injuries, occurred.

In the State Court Action, notwithstanding the fact that Oslin did not set in motion the chain of events that resulted in the injury, Oslin was deemed personally liable for Adrian's injuries under two theories.  First, she became liable for what would have been the Corporation's liability due to her failure to maintain the Corporation's separate existence. The Corporation's liability arose under Oklahoma's "dram-shop" law.

The "dram shop" doctrine provides that the owner of a business that sells liquor to an obviously intoxicated person is liable for injuries to third parties resulting from the person's intoxication.  The doctrine also recognizes a cause of action against the owner of a business that sells liquor to a minor where such sale resulted in an injury to the minor or to a third party.  The claim originated under common law principles of negligence, requiring the establishment of a duty, a breach of duty, and an injury proximately caused by the breach.[52] Because it is unlawful by statute to sell liquor to intoxicated persons and minors, an injured party may prevail by establishing the relaxed elements of negligence per se, wherein the plaintiff must prove (1) the injury was proximately caused by a violation of a statutory duty to refrain from selling alcohol to obviously intoxicated persons or minors; (2) the injury was

---

[52]See Brigance v. Velvet Dove Restaurant, Inc., 1986 OK 41, 725 P.2d 300, 305.

of a type intended to be prevented by the statute; and (3) the injured party was of the class meant to be protected by the statute.[53]   No subjective intent to injure is required to establish negligence or negligence per se.

In this case, the Club employee's unlawful service of liquor imposed liability on the owner of the Club, *i.e.*, the Corporation. Oslin was found legally responsible for the Corporation's debt as its alter ego.[54]  Oslin's liability for the employee's unlawful service of liquor is vicarious. The plain language of Section 523(a)(6) requires that the willful act leading to the injury be performed "by the debtor," so vicarious liabilities do not qualify for an exception from discharge.

In <u>Thatcher v. Austin (In re Austin)</u>,[55] the bankruptcy court was presented with facts and arguments similar to those before this Court.  In <u>Thatcher</u>, a pedestrian was killed by a minor drunk driver after the minor attended a rock concert where a vendor unlawfully sold him beer. The pedestrian's representatives (estate) sued the vendor and the concert promoter (among others), and thereafter, the promoter filed bankruptcy.  The estate asserted that its claim was excepted from the promoter's discharge under Section 523(a)(6) based on two arguments.  First, the estate charged that the promoter's failure to prevent the minor from consuming beer was willful and malicious.  The court determined that because the promoter did not personally serve the beer, he did not commit any deliberate act with an intent to injure

---

[53]<u>See</u> <u>Busby v. Quail Creek Golf and Country Club</u>, 1994 OK 63, 885 P.2d 1326, 1329.

[54]<u>See</u> Response at 7; JEJ at 6-7.

[55]36 B.R. 306 (Bankr. M.D. Tenn. 1984).

the pedestrian. The estate's other argument was that the promoter was vicariously liable for the vendor's willful and malicious act of serving beer to the minor. The court rejected that argument as well, stating:

> There is nothing in the language or the legislative history of § 523(a)(6) to suggest that common law notions of vicarious or imputed liability are appended to the statutory exceptions to a discharge in bankruptcy. Quite the contrary, application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from willful acts committed by the debtor be nondischargeable. Vicarious liability as a social policy or legal fiction ignores the master's knowledge and imposes fault and financial responsibility without regard to culpability or intent. Section 523(a)(6) is founded on the contrary notion that only a debt resulting from the deliberate acts of the debtor can be excepted from discharge in bankruptcy. In the absence of clear statutory exception for "vicarious acts," the legislative intent to permit a broad discharge in bankruptcy should not be emasculated by common law tort principles.[56]

Notwithstanding that under applicable tort law Oslin may be held liable for the acts of her employees, the employee's *act* of serving liquor to the minor cannot be imputed to Oslin for the purpose of Section 523(a)(6).[57]

---

[56]Id. at 311-12. See also Loucks v. Smith (In re Smith), 537 B.R. 1 (Bankr. M.D. Ala. 2015) (Section 523(a)(6) claim dismissed; plaintiffs who were sexually harassed by debtor's employees failed to plead facts to show that debtor intended to injure them by failing to act to stop the sexual harassment; in addition, although debtor would be vicariously liable to plaintiffs under applicable law, vicarious liability, without more, cannot form the basis for a determination that the debtor's conduct was willful); Columbia Farms Distr., Inc. v. Maltais (In re Maltais), 202 B.R. 807 (Bankr. D. Mass. 1996) (acts of another cannot be imputed to the debtor for purposes of Section 523(a)(6)); Giuliano v. Albano (In re Albano), 143 B.R. 323 (Bankr. D. Conn. 1992) (even though debtor/restauranteur could be held vicariously liable for injuries to plaintiff arising from altercation with debtor's bouncer, such debt was not excepted from debtor's discharge under Section 523(a)(6); bouncer's acts and intentions could not be imputed to debtor to establish willful and malicious injury).

[57]Armstrong cites Mayher v. Ma (In re Ma), 375 B.R. 387 (Bankr. N.D. Ohio 2007) for the proposition that the debt of a business owner held vicariously liable for the acts of others in the operation of the business may be non-dischargeable in the business owner's

Oslin was also held directly liable for Adrian's injuries in the State Court Action for gross negligence in managing, supervising, and operating the Club.[58] The Complaint Armstrong filed in this case, however, provides no details from which one could reasonably infer that Oslin's "lax attitude"[59] toward management and supervision was accompanied by a subjective intent to harm anyone.  Even if Oslin did or should have realized that her inattention created a strong probability that someone could be harmed, a "strong probability is a different thing from the substantial certainty"[60] of harm required to establish a "willful" injury.  As stated in Geiger, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[61]

In her Response, Armstrong contends that the mental state component of Section 523(a)(6) is not completely subjective.  Instead, she advocates for the standard adopted by

_____

personal bankruptcy.  Response at 18.  In Ma, however, the bankruptcy court found that the debtor, who owned a mortgage brokerage company, *subjectively intended to harm the creditor* through actions he himself took on behalf of the company.  Those acts included lying to the creditor about her credit rating, misrepresenting that she was ineligible for a low interest mortgage; misrepresenting the cost of refinancing her current mortgage; inducing her to unnecessarily refinance mortgages on other properties; misrepresenting the projected monthly mortgage payment; presenting forms in blank for the creditor's signature; and inserting terms in the documents that were favorable to the debtor but were not agreed to by the creditor, such as increasing the amount borrowed, the brokerage fee, and the interest rate.  The Court concluded that the debtor personally committed these unlawful acts with the intention of injuring the creditor.

Armstrong's Complaint fails to allege that Oslin took any particular act with an intent to inflict personal injuries upon Adrian or upon anyone else.

[58]Complaint at 5, ¶ 27 and at 14, ¶ 88-89.

[59]JEJ at 5, ¶ 34.

[60]RESTATEMENT (SECOND) OF TORTS § 500, cmt. *f.*

[61]Geiger, 523 U.S. at 64.

18

the Fifth Circuit Court of Appeals in the case of <u>Miller v. J.D. Abrams Inc. (In re Miller)</u>.[62]
In <u>Miller</u>, the Fifth Circuit held that the "willful and malicious" prong of Section 523(a)(6)
could be satisfied by evidence of either "an objective substantial certainty of harm *or* a
subjective motive to cause harm."[63]  The Tenth Circuit, however, has expressly rejected the
"objective substantial certainty of harm" standard promulgated by the Fifth Circuit.[64]

The Tenth Circuit acknowledged that courts are split as to whether willfulness under
Section 523(a)(6) requires the *debtor* to believe with substantial certainty that the conduct
will cause the injury (a subjective standard) or whether it is sufficient that the *factfinder* finds
that the conduct was substantially certain to cause the injury (an objective standard).[65]  The
Court concluded, however, that the objective test adopted by the Fifth Circuit in <u>Miller</u> was
"at odds" with the Supreme Court's approach in <u>Geiger</u>,[66] and affirmed the purely subjective
standard for intent, focusing "on the state of mind of the debtor, who must have *wished* to
cause injury or at least *believed* it was substantially certain to occur. When injury was
'neither desired nor *in fact* anticipated by the debtor,' it is outside the scope of the statute."[67]
Again, Armstrong's Complaint does not contain any specific details that might show Oslin

---

[62]156 F.3d 598 (5th Cir. 1998).

[63]<u>Id</u>. at 606 (emphasis added).

[64]See <u>Via Christi Regional Medical Center v. Englehart (In re Englehart)</u>, 229 F.3d
1163 (Table), 2000 WL 1275614 (10th Cir.) at *3.

[65]<u>Id</u>.

[66]<u>Id</u>. at *3.

[67]<u>Id</u>. *quoting* <u>Geiger</u>, 523 U.S. at 62 (emphasis added).  <u>See also</u> <u>McCain Foods USA
Inc. v. Shore (In re Shore)</u>, 317 B.R. 536, 542 (B.A.P. 10th Cir. 2004).

either desired or in fact anticipated that her negligent management would result in Adrian's injury.

Alternatively, Armstrong quotes extensively from <u>ABF, Inc. v. Russell (In re Russell)</u>, a case before the bankruptcy court in the Northern District of Indiana,[68] to argue that the <u>Geiger</u> standard is ambiguous, and proposes that it is not the injury that must be intentional, but the act that caused the injury.[69]   Alas, <u>Geiger</u> specifically rejected that paradigm, famously stating "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[70]

> [A] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act – for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic – could fit the description. A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed."[71]

Taking all well-pleaded allegations and reasonable inferences therefrom in Armstrong's favor, Armstrong fails to state a plausible claim that Oslin's liability to Armstrong resulted from a "willful" injury.[72]

---

[68] 262 B.R. 449 (Bankr. N.D. Ind. 2001).

[69] <u>See</u> Response at 9-12.

[70] <u>Geiger</u>, 523 U.S. at 61 (emphasis original).

[71] <u>Id</u>. at 62 (citations omitted).

[72] Concluding that Armstrong has failed to plead facts sufficient to plausibly infer a "willful" injury, the Court need not analyze whether the Complaint succeeds in showing "maliciousness."

C.      Section 523(a)(9)

"[E]xceptions to discharge should be confined to those plainly expressed."[73]  Section 523(a)(9) provides an exception to discharge of a debt "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance."[74]  This exception is confined to instances in which the *debtor* operated a motor vehicle while the *debtor* was intoxicated, thereby resulting in death or personal injury.  The statute is not ambiguous.

Armstrong has not, and cannot, allege that Oslin unlawfully operated a motor vehicle while intoxicated, thereby causing Adrian's injuries.  Accordingly, Armstrong has failed to state a plausible claim that her judgment against Oslin is non-dischargeable under Section 523(a)(9).

**V.      Conclusion**

For the reasons state above, the Motion to Dismiss is granted.

**SO ORDERED** this 24th day of January, 2018.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[73]Geiger, 523 U.S. at 62 (quotations and citations omitted).

[74]11 U.S.C. § 523(a)(9).