UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | Filed/Docketed |
| | ) | Aug 13, 2018 |
| OSLIN, DEBORAH JOYCE, | ) | |
| | ) | Case No. 17-11214-R |
| Debtor. | ) | Chapter 7 |

___

| | | |
|---|---|---|
| MAXINE ARMSTRONG, as | ) | |
| Guardian of the Person and Estate | ) | |
| of Adrian Armstrong, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-1034-R |
| | ) | |
| DEBORAH OSLIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING RULE 52(c) MOTION

On August 9, 2018, the objection to discharge claims of Plaintiff Maxine Armstrong, as Guardian of the Person and Estate of Adrian Armstrong, against Defendant/Debtor Deborah Oslin under 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A)[1] came on for trial. Exhibits were admitted by stipulation. Ms. Armstrong called one witness, Ms. Oslin, before resting. Ms. Oslin moved for a directed verdict, which, in a non-jury trial, is a request for a motion for judgment on partial findings under Fed. R. Civ. P. 52(c).[2]

___

[1] All statutory references herein are to sections of the Bankruptcy Code, title 11 of the United States Code, unless otherwise noted.

[2] Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the

> Judgment is appropriate under Rule 52(c) where a plaintiff fails to make a prima facie case, or, even if a prima facie case has been made, the court determines that the preponderance of the evidence is against the plaintiff. A motion under Rule 52(c) is not the same as a motion for a directed verdict. The court neither draws special inferences in the nonmovant's favor, nor considers the evidence in the light most favorable to the nonmovant. Because the court is the finder of fact in a bench trial, as in the present case, the bankruptcy judge has discretion on a Rule 52(c) motion to weigh evidence and determine credibility.[3]

After considering the testimony of Ms. Oslin, the exhibits admitted, and the relevant legal authority, the Court concludes as follows:

**Jurisdiction**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2)(J), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Findings of fact and conclusions of law.**

Ms. Armstrong obtained a large judgment against Ms. Oslin in March 2017. Ms. Oslin filed a petition under Chapter 7 of the Bankruptcy Code on June 17, 2017.

---

> party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c) (made applicable in adversary proceedings by Bankruptcy Rule 7052).

[3]Richards v. Smith (In re Smith), 472 B.R. 833, 835-36 (Bankr. D. Colo. 2012) (citations omitted).

**Section 727(a)(2)(A)**

In order to deny Ms. Oslin's discharge under § 727(a)(2)(A), Ms. Armstrong must establish by a preponderance of evidence that Ms. Oslin (1) "transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor."[4]

Ms. Armstrong contends that Ms. Oslin owned a retail liquor store called Crossbow Liquor ("Crossbow") jointly with Jonah Smith in the one year period preceding her bankruptcy filing, and that she transferred her interest to Mr. Smith shortly before her bankruptcy. The only evidence of Ms. Oslin's alleged interest in Crossbow is a document entitled "Certificate of Fictitious Name of (Name of the Customer's Business)" dated June 17, 2016 (the "2016 CFN"), which Ms. Oslin and Mr. Smith signed at the request of Crossbow's depository bank, IBC Bank, in connection with a recently opened checking account. An employee of IBC Bank dropped off the form at the liquor store. Ms. Oslin inquired of IBC Bank as to what to do with it and was instructed to fill it out and record it in the office of the Tulsa County Clerk. Ms. Oslin filled in the blanks and she and Mr. Smith signed the document. The form, as filled in, states in relevant part –

Know all men by these presents:

That  ___Jonah R. Smith___  and  ___Deborah Oslin___
            Name of Owner            Name of Owner (if spouse of first owner))

Are associated as partners in the business of ownership and management of

---

[4] Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1293 (10th Cir. 1997).

      _____Liquor & Beer_____ under the firm name of
                Type of business

      _____Crossbow Liquor_____. There are no other owners

belonging to [sic] said business.[5]

Ms. Oslin credibly testified that she signed and recorded the document without carefully reading or understanding it, and did so only because the bank appeared to require it. Ms. Oslin was an authorized signatory on Crossbow's IBC checking account, but she was not an owner of Crossbow.[6] Only Mr. Smith had a license issued by the Alcoholic Beverage Laws Enforcement Commission ("ABLE") to own a liquor store.[7]

On May 17, 2017, Mr. Smith recorded a "Certificate of Fictitious Name – Sole Ownership," certifying that he was sole owner of Crossbow Liquor, that he began the business on December 10, 1987, and that "there are no other members belonging to [sic] said

---

[5]Defendant's Exhibit 115. The form also had two blank lines for "Name of Owner (typed)" on which Ms. Oslin printed Mr. Smith's name and her name. The two signature lines called for "Customer Signature[s]," rather than owner's signatures, however, which lends great credibility to Ms. Oslin's testimony that IBC Bank drafted the form for its own use.

[6]The Depositor's Agreement between IBC Bank and Crossbow indicates that Crossbow was a Sole Proprietorship and that Mr. Smith "dba Crossbow Liquor Store" was the Depositor. Mr. Smith signed the agreement as Owner and Ms. Oslin signed as an Authorized Signer on Crossbow's checking account. Defendant's Exhibit 114.

[7]Defendant's Exhibits 106-107. Ms. Oslin had a license to sell liquor as an employee of a liquor store, but did not have an owner's license. See Defendant's Exhibit 123.

sole ownership."[8] On June 2, 2017, Ms. Oslin and Mr. Smith signed and recorded a "Withdrawal of Certificate of Fictitious Name"[9] to further correct the record.

Ms. Armstrong did not show, by a preponderance of the evidence that Ms. Oslin had transferred any legal or equitable interest in Crossbow. All documentary evidence before the Court, including state and local liquor licenses, federal and state tax returns, and sales tax permits, indicate that Mr. Smith was the sole owner of Crossbow at all relevant times.[10] Further, the 2016 CFN did not convey a property interest from Mr. Smith to Ms. Oslin, nor did the Withdrawal of Certificate of Fictitious Name convey any property interest from Ms. Oslin back to Mr. Smith. No transfer of estate property occurred. Accordingly, judgment will be entered in favor of Ms. Oslin on Ms. Armstrong's § 727(a)(2)(A) claim.

**Section 727(a)(3)**

Section 727(a)(3) provides that discharge may be denied if –

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.[11]

---

[8] Defendant's Exhibit 116.

[9] Defendant's Exhibit 117.

[10] See Defendant's Exhibits 106-114.

[11] 11 U.S.C. § 727(a)(3).

5

Ms. Armstrong contends that the financial records Ms. Oslin kept with respect to her business of renting floor space in a commercial building to flea market vendors from 2014 to 2017 were either falsified or inadequate.

Ms. Oslin maintained a record of her flea market rental income on a yellow pad of paper. The record included the dates and amounts of income received and miscellaneous notes regarding weather conditions and other variables affecting vendor participation.[12] Ms. Armstrong argued that the Court should find that Ms. Oslin did not keep contemporaneous records, but instead manufactured the entries on the yellow pad after the fact for the purpose of this litigation. The Court declines to so find. Ms. Oslin credibly testified as to when and how she recorded the rental income. Most income was in cash, as is commonplace in the flea market arena. Each day the flea market was open, Ms. Oslin counted the cash, entered the total on the yellow pad, and deposited the cash into her flea market account. The Court finds that the entries were made at the time income was received.

With respect to the adequacy of the records, Ms. Armstrong must establish by a preponderance of the evidence that Ms. Oslin "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain [her] financial condition and *material business* transactions."[13] The Court finds that the nature of the flea market space rental business justified keeping records in the manner Ms. Oslin did, and that the records

---

[12]See Plaintiff's Exhibit 61.

[13]Brown, 108 F.3d at 1295 (emphasis original).

she kept were adequate to allow her accountant to prepare tax returns and to allow the trustee and creditors of her bankruptcy estate to ascertain her financial condition. Accordingly, judgment will be entered in favor of Ms. Oslin on the § 727(a)(3) claim.

**Section 727(a)(4)(A)**

With respect to the § 727(a)(4)(A) claim, Ms. Armstrong contends that Ms. Oslin failed to disclose in her schedules her liquidation of stock or withdrawal of accumulated dividends or some other transaction with Westar Energy.[14] To prevail, Ms. Armstrong must establish by a preponderance of the evidence that Ms. Oslin "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account"[15] and that the false oath "related to a material fact."[16]

Ms. Oslin credibly testified that a few months prior to the bankruptcy, she liquidated her position in Westar Energy and received a check in the amount of $2,653.00. She deposited the check into her checking account twelve days prior to her bankruptcy and used the funds to pay her bankruptcy lawyer. Ms. Oslin admitted that she did not disclose the

---

[14] Ms. Armstrong did not establish the nature of the transaction, so it is unclear where Ms. Oslin should have reported it. If it was liquidation of stock, it likely should have been reported as 2017 income in Part 2 of her Statement of Financial Affairs. If she simply closed a financial account into which dividends had been deposited, it likely should have been reported as a closed account in Part 8, ¶ 20 of her Statement of Financial Affairs.

[15] 11 U.S.C. § 727(a)(4)(A).

[16] Brown, 108 F.3d at 1294.

transaction in her schedules, but stated that her omission was inadvertent. "A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence."[17]

Ms. Armstrong did not meet her burden of showing that Ms. Oslin knowingly and fraudulently omitted the Westar Energy transaction from her schedules, nor did she present sufficient evidence that Ms. Oslin otherwise knowingly and fraudulently made a false oath.[18] Accordingly, judgment will be entered in favor of Ms. Oslin on the § 727(a)(4)(A) claim.

**Conclusion**

Ms. Oslin's motion for directed verdict, recharacterized as a motion for judgment on partial findings under Rule 52(c), is granted.

**SO ORDERED** this 13th day of August, 2018.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[17] Id. (citation omitted).

[18] Ms. Armstrong referred only to the Westar Energy omission in response to Ms. Oslin's motion for directed verdict. In her case in chief, however, she pointed out other discrepancies in Ms. Oslin's schedules, and questioned why she needed to amend her schedules three times. The Court has reviewed the discrepancies and amendments, and considered Ms. Oslin's testimony, and finds that the discrepancies and amendments either did not relate to a material fact or they were not made with fraudulent intent, or both. The Court finds that Ms. Oslin's amendments constituted diligent attempts to be thoroughly transparent about her assets and financial condition.

The Court specifically finds that Ms. Oslin did not conceal any assets. Ms. Armstrong alleged that Ms. Oslin failed to declare as an asset a "bad faith" claim against an insurer and a malpractice claim against her prior attorney. Ms. Armstrong did not establish that such claims existed, however. Ms. Armstrong also failed to establish Ms. Oslin concealed any assets of Vegas Corporation, a corporation wholly owned by Ms. Oslin and through which she formerly operated a nightclub. There was no evidence that the Vegas Corporation had any assets of value when the club ceased operating four years prior to the bankruptcy. The corporation had been suspended by the state for years, and Ms. Oslin paid franchise taxes and fees to reinstate it in 2017 so that she could formally dissolve it.